**Manuel S. Hiraldo**
*Pro Hac Vice*
Hiraldo P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713
mhiraldo@hiraldolaw.com

**Ignacio J. Hiraldo**
*Pro Hac Vice*
IJH Law
14 NE First Ave
10th Floor
Miami, FL 33132
Telephone: 786.351.8709
ijhiraldo@ijhlaw.com

**Kevin Chames**
OSB #870300
Attorney at Law
4150 N. Suttle Road
Portland, OR. 97217
503 939-3933
kevin.chames1@gmail.com

**Stefan Coleman**
*Pro Hac Vice*
Law Offices of Stefan Coleman, P.A.
law@stefancoleman.com
1072 Madison Ave. #1
Lakewood, NJ 08701
Phone: (877) 333-9427
Fax: (888) 498-8946

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

### CASE NO. 3:18-cv-00203-HZ

| | |
|---|---|
| **TODD NICHOLSON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**REI ENERGY LLC,** a limited liability company,<br><br>*Defendant.* | **CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY** |

Plaintiff Todd Nicholson, pursuant to Local Rule 7-1(e), files his Response in Opposition to Defendant REI Energy, LLC's Motion to Stay, [ECF No. 35], and states:

## I.    INTRODUCTION

Defendant hopes that the Federal Communications Commission ("FCC"), under industry friendly leadership, will issue an order that will allow it to escape liability for its unsolicited robocalls.  Fortunately for Plaintiff and the Class Members, even if the FCC issues an order reversing prior orders with respect to what constitutes an automatic telephone dialing system ("ATDS"), Defendant cannot escape the Ninth Circuit's binding opinion in *Marks v. Crunch San Diego, LLC* 904 F.3d 1041, 1043 (9th Cir. 2018).

"Congress delegated authority to the Federal Communications Commission (the "FCC") to prescribe regulations that implement TCPA's provisions." *Olney v. Job.Com, Inc*., No. 1:12-cv-01724-LJO-SKO, 2014 U.S. Dist. LEXIS 60843, at *12 (E.D. Cal. May 1, 2014) (citing 47 U.S.C. §§ 227(b)(2), (f)).   Under the Hobbs Act, "[t]he FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals." *Olney*, 2014 U.S.Dist.LEXIS 60843, at *12 (citing 28 U.S.C. § 2342 et seq.; *Pacific Bell v. Pac West Telecomm,* 325 F.3d 1114, 1125 (9th Cir. 2003)).   In other words, under the statute and Hobbs Act, the FCC is tasked with prescribing implementing regulations, which regulations are binding unless challenged at the federal appellate level.  Thus, the statute serves as a floor, and the FCC can issue rules and regulations expanding the statute (as it has done in past), but it cannot issue rules or regulations that re-write or otherwise limit the statute.

Consequently, even if the FCC were to issue a new rule that changes course from its prior orders, it cannot alter the Ninth Circuit's interpretation of the language of the statute.  In *Marks*, the Ninth Circuit held that equipment which has the capacity to dial automatically from a list of telephone numbers, like the Augutech platform utilized by Defendant, is an automatic telephone dialing system ("ATDS") under the language of the statute. *See* 904 F.3d at 1052 ("we conclude

that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers.").

Therefore, a stay here is not warranted because either (1) the FCC will issue a rule consistent with its prior order – i.e. that equipment that dials from a list automatically is an ATDS; or (2) the FCC will decline to issue an interpretive order, in which case the Ninth Circuit's interpretation will be binding.  Under either scenario, the equipment utilized by Defendant is an ATDS and a stay is not warranted under the primary jurisdiction doctrine or the Court's inherent authority.

Additionally, Defendant's motion is carefully worded to conceal its most glaring weakness: the FCC has yet to indicate whether it will even issue a new rule and, if it does, "[i]t is unknown when the…interpretative ruling…." will be issued.  *Halperin v. Youfit Health Clubs, LLC*, Case No. 0:18-cv-61722-WPD, ECF No. 16 (S.D. Fla. Sept. 19, 2018) (denying motion to stay pending purported forthcoming rule); *see also Powell v. YouFit Health Clubs Ltd. Liab. Co.*, No. 17-cv-62328, 2018 U.S. Dist. LEXIS 163747 (S.D. Fla. Sep. 24, 2018) ("other than Defendant's assertions that an interpretive ruling by the FCC is expected by late 2018 or early 2019, there is no indication that the FCC will in fact issue a ruling by a certain date or even within a certain timeframe.").

As Defendant notes in its motion, the FCC has merely issued a Public Notice with respect to various issues, including some that touch upon what may constitute an ATDS.  However, "the

FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue." *Gould v. Farmers Ins. Exch.*, No. 4:17 CV 2305 RWS, 2018 U.S. Dist. LEXIS 131508, at *4 (E.D. Mo. Aug. 6, 2018).  As such, Defendant's "suggestion that a stay would be brief is therefore speculative."  *See id.*

If there is any question that the FCC has yet to decide how it will proceed, the Chairman of the FCC gave testimony during an August 16th Senate oversight hearing confirming that there is no support for Defendant's claim that a rule is forthcoming, and even if a rule is to be issued, the timing is unknown:

> We have issued a public notice, and are still taking public input on what the appropriate way forward is with respect to autodialers, reassigned numbers, and revocation of consent.  And we look forward to developing the record further with the staff and try to assess the way forward.[1]

Even if the FCC ultimately decides to issue a new rule, which is far from certain, the process could take years based on prior rulemaking proceedings.  And it is likely that, like prior orders, the new one will be challenged.  Thus, what Defendant proposes is to indefinitely stay this case solely for its benefit and to avoid the liability it faces for violating the TCPA.

## II.   PROCEDURAL BACKGROUND

This putative class action under the Telephone Consumer Protection Act ("TCPA") was filed on January 31, 2018.  [ECF No. 1].  On March 1, 2018, Defendant filed its Answer and Affirmative Defenses.  [ECF No. 8].  Almost three months after entry of the Court's Scheduling Order, Defendant sought to bifurcate discovery to permit it to file an early summary judgment on whether the equipment it used to transmit the calls at issue is an automatic telephone dialing system

---

[1] https://www.commerce.senate.gov/public/index.cfm/2018/8/oversight-of-the-federal-communications-commission, at 01:37:45; (last accessed on September 20, 2018).

("ATDS") governed by the TCPA. [ECF No. 23]. Plaintiff opposed bifurcation as unnecessary and because it would result in the needless duplication of efforts.

The Court held a hearing on Defendant's request to bifurcate, and ultimately granted Defendant's request. Specifically, the Court ordered the parties to complete discovery on the ATDS issue by September 7, 2018, and gave Defendant until September 28, 2018 to "file a motion for summary judgment regarding whether an ATDS was utilized to make the calls to Plaintiff at issue in this lawsuit…" [ECF No. 34].

Plaintiff subsequently issued various subpoenas aimed at obtaining discovery on the ATDS issue, served written discovery on Defendant, and took the deposition of Internatiocall, Inc., the marketing vendor hired by Defendant to place the calls at issue, on September 12, 2018. Additionally, Plaintiff retained expert Randall A. Snyder, who issued a report that was served on Defendant. In his report, Mr. Snyder opines that the Augutech platform utilized by Defendant "has the capacity to dial telephone numbers from a stored list or database of numbers without human intervention." A copy of Mr. Snyder' Report is attached as **Exhibit A**.

After the deposition of Internatiocall, Defendant failed to timely file its summary judgment motion by the Court's deadline. Rather than argue that Defendant had waived its motion, counsel for Plaintiff contacted Defendant's counsel on October 9, 2018 to inquire into the status of the motion. On October 18, 2018, the Court's Deputy sent an email to the parties to inquire into the status of the case. On October 25, 2018, counsel for Defendant advised the Court's Deputy that Defendant would be filing its motion by November 9, 2018.

That did not occur. Instead, Defendant filed the instant Motion to Stay, requesting an indefinite stay pending what it believes will be a favorable order from the FCC's that will permit it to escape liability.

### III.   LEGAL STANDARD

#### A.   <u>Standard Under the Primary Jurisdiction Doctrine</u>

The primary jurisdiction doctrine "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Jordan v. Nationstar Mortg. LLC*, No. 14-cv-00787-WHO, 2014 U.S. Dist. LEXIS 148844, at *12 (N.D. Cal. Oct. 20, 2014) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

In determining whether to apply the primary jurisdiction doctrine, the Ninth Circuit has considered whether "(1) the issue is within the 'conventional experiences of judges' or 'involves technical or policy considerations within the agency's particular field of expertise,' (2) the issue 'is particularly within the agency's discretion,' and (3) 'there exists a substantial danger of inconsistent rulings.'" *Jordan*, 2014 U.S. Dist. LEXIS 148844, at *12 (quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc*., 658 F.3d 1038, 1048-49 (9th Cir. 2011)).  However, the court "must balance the parties' need to resolve the action expeditiously against the benefits of obtaining the federal agency's expertise on the issues." *Id*.

#### B.   <u>Standard Under the Court's Inherent Authority</u>

"The district court has the inherent power to stay its proceedings."  *Reynolds v. Geico Corp.*, No. 2:16-cv-01940-SU, 2017 U.S. Dist. LEXIS 28867, at *5 (D. Or. Mar. 1, 2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How

this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.")).

"The proponent of a stay bears the burden of establishing its need." *Reynolds*, 2017 U.S. Dist. LEXIS 28867, at *6 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).  "In considering a motion to stay, a court must consider three factors: (1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party if the action is not stayed, and (3) the judicial resources that would be saved. *Reynolds*, 2017 U.S. Dist. LEXIS 28867, at *6 (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Oregon, ex rel. Kroger v. Johnson & Johnson*, No. 11-CV-86-AC, 2011 U.S. Dist. LEXIS 39187, 2011 WL 1347069, at *2 (D. Or. Apr. 8, 2011)).  "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Reynolds*, 2017 U.S. Dist. LEXIS 28867, at *6 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

## IV.   ARGUMENT

### A.  <u>The Primary Jurisdiction Doctrine Does not Apply</u>.

The primary jurisdiction doctrine is "reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Pieterson*, 2018 U.S. Dist. LEXIS 113125, at *7-8 (quoting *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114) (9th Cir. 2008))).  "The 'deciding factor' in whether to invoke the doctrine is 'efficiency.'"  *Id.* (quoting *Rhoades v. Avon Prods. Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).  In other words, "whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id*; *see also Lardner v. Diversified Consultants Inc.*, No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 190656, at *2-3 (S.D. Fla. Apr. 28, 2014) ("A court should be

reluctant to invoke the doctrine of primary jurisdiction because it may result[] in added expense and delay to the litigants.") (internal citations and quotation marks omitted).

To date, at least two district courts have analyzed this very issue and have held that a stay would be indefinite and would not promote efficiency. *See Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, at *7-8 (N.D. Cal. July 2, 2018); *Somogyi v. Freedom Mortg. Corp.*, Civil Action No. 17-6546 (JBS/JS), 2018 U.S. Dist. LEXIS 129697, at *12 (D.N.J. Aug. 2, 2018) ("Whatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS…. It is therefore doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues…").

Second, Defendant's primary jurisdiction argument still fails because factor one—the need to resolve an issue—is not satisfied here.  "[T]he primary jurisdiction doctrine does not comfortably fit the circumstances of this case because the issues before the FCC are not ones of first impression and controlling or persuasive law already exists." *Pieterson*, 2018 U.S. Dist. LEXIS 113125 at *7-8.

As discussed above, the Ninth Circuit has already held that "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052.  Thus, binding authority on what constitutes an ATDS already exists, and even if the FCC were to issue a new rule, the statutory definition of ATDS would be left undisturbed, making the application of the primary jurisdiction doctrine improper.

As the court in *Somogyi* held:

> Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either *ACA International* or *Dominguez*, the Court finds it is unnecessary to issue a stay at the present time.  Whatever guidance the FCC may

issue in the future will not alter the statutory definition of an ATDS.

2018 U.S. Dist. LEXIS 129697, at *12.

Finally, "the primary jurisdiction doctrine requires the Court to consider 'whether invoking primary jurisdiction would needlessly delay the resolution of claims.'" *Pieterson*, 2018 U.S. Dist. LEXIS 113125 at *11 (quoting <u>Astiana</u>, 783 F.3d at 760). "Experiences teaches [that the FCC's rulemaking process] could be lengthy." *Pieterson*, 2018 U.S. Dist. LEXIS 113125 at *11. No one, including Defendant, knows when the FCC order will be issued. In the past, the process has taken years. *Id*. at *14 (citing *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012)(noting that the FCC's 2008 order took three years to develop)). "And…the FCC's order will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling." *Pieterson*, 2018 U.S. Dist. LEXIS 113125 at *14.

Indeed, "this cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay." *Id*. at *15 (citing *Barrera v. Comcast Holdings Corp.*, 2014 U.S. Dist. LEXIS 65800, 2014 WL 1942829 (N.D. Cal. May 12, 2014) (staying TCPA case in 2014 while the FCC considered a petition on the issue of reassigned numbers, after which a petition for judicial review of the resulting 2015 Declaratory Ruling was filed in the D.C. Circuit; the parties ultimately stipulated to dismiss the case)).

## B. <u>Stay is not Warranted Under the Court's Inherent Authority</u>.

The inherent power of district courts to grant stays calls "for exercise of sound discretion," by properly limiting the scope of the stay, if any. *Leyva v. Certified Grocers of Cal., Ltd,* 595 F.2d 857, 863 (9th Cir. 1979); *Medina v. Nationstar Mortg. LLC,* 2017 U.S. Dist. LEXIS 35835, at *2 (N.D. Ga. 2017). "Stays should not merely postpone the district court's inevitable consideration

of the claim, they should conserve judicial resources or aid in comprehensive disposition of the litigation." *Medina,* 2017 U.S. Dist. LEXIS 35835 at *4 (internal quotation omitted) (citation omitted). There is a presumption that a stay should be denied, which Defendant here has the burden of overcoming. *See Lockyer v Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005).

In determining whether to stay the action, the Court must balance the "possible damage [to plaintiff] which may result from the granting of a stay," with "the hardship or inequity which [defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [defendant] prays will work damage to someone else," then the defendant must show a "clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936).

### 1. *Plaintiff Would be Significantly Prejudiced by a Stay.*

Defendant ignores that Plaintiff and the putative class members would be unfairly disadvantaged by an unknown and indefinite delay in conducting discovery, which delay has already occurred as a result of Defendant's initial bifurcation demand and failure to timely comply with the Court's order on its summary judgment motion. A prolonged stay risks the irretrievable loss of evidence. Witness memories fade over time, original documents can be lost, and thus a protracted stay leads to irreversible loss of needed information. *See Montegna v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 172713 at *15 ("the grant of a stay may cause Plaintiff to lose evidence currently in the dominion and control of others not joined in this suit."); *Cabiness v. Educ. Fin. Solutions, LLC,* 2017 U.S. Dist. LEXIS 6304, at *3 (N.D. Cal. 2017) ("[P]assage of time will make it more difficult to reach the class members and will increase the likelihood that relevant evidence will dissipate."). Notably, Defendant has offered no guarantees that the putative class data has been preserved or whether it has taken the necessary steps to preserve evidence. The

concern over destruction of evidence, especially in a putative class case, should not be taken lightly, as Plaintiff stands to potentially lose discoverable data while waiting for the FCC to issue its order, which no one, including Defendant, knows when that will occur.  Therefore, this factor weighs in favor of Plaintiff and against a stay.

### 2. *Defendant has Failed to Demonstrate any Hardship.*

As held by the Supreme Court, the proponent of a stay has the threshold burden of proving that it will suffer immense hardship absent a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis*, 299 U.S. 248, 255.  Merely having to continue discovery and commence trial preparation is not a sufficient basis. *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'"); *Crooks v. Rady Children's Hosp.*, 2017 U.S. Dist. LEXIS 168085 at *9-10 (S.D. Cal. 2017) ("Defendant's contention that it will suffer hardship if the action is stayed due to unnecessary discovery and trial preparation does not justify a stay").  The only hardship Defendant points to is that it may have to "expend[] time and resources to litigate." Mot. at pg. 19.  However, normal litigation burdens alone are insufficient to warrant a stay.  As such, this factor weighs against granting a stay.

### 3. *A Stay in This Case Will not Conserve Judicial Resources.*

Defendant contends that a stay is necessary because the FCC's order will have an impact on the issue of whether it used an ATDS to contact Plaintiff and the class members.  Defendant is mistaken.  As discussed above, the FCC can issue rules and regulations expanding the statute, but it cannot re-write or limit the statute.  In the event the FCC declines to take a position consistent with its prior orders, the Ninth Circuit's interpretation of the language of the statute would be binding on this Court.  Accordingly, there is no scenario in which Defendant will escape liability as it hopes.  Either the FCC will issue an order consistent with its 2003 and 2008 orders – that

11

equipment that dials from a list automatically is an ATDS – or the *Marks* opinion will instruct this Court on how to rule on the ATDS.  This factor, therefore, weighs against a stay.

## V.    CONCLUSION

It is truly astonishing that after requesting bifurcation of discovery, forcing Plaintiff to incur costs associated with ATDS discovery, and missing this Court's deadline to file its summary judgment motion, Defendant has the audacity to request an indefinite stay of the proceedings. Defendant's conduct should not be countenanced.  Plaintiff and the class members should be permitted to pursue their case without any further delay from Defendant.

**WHEREFORE**, Plaintiff Todd Nicholson, respectfully request respectfully requests that this Court deny Defendant's motion, and for such other and further relief as this Court deems just and equitable under the circumstances.

Date: November 21, 2018

Respectfully submitted,

*/s/ Manuel S. Hiraldo*
**Manuel S. Hiraldo**
*Pro Hac Vice*
Hiraldo P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713
Email: mhiraldo@hiraldolaw.com

**Ignacio J. Hiraldo**
*Pro Hac Vice*
IJH Law
14 NE First Ave
10th Floor
Miami, FL 33132
Telephone: 786.351.8709
Email: ijhiraldo@ijhlaw.com

**Kevin Chames**
OSB #870300
Attorney at Law
4150 N. Suttle Road
Portland, OR. 97217
503 939-3933
kevin.chames1@gmail.com

**Stefan Coleman**
*Pro Hac Vice*
Law Offices of Stefan Coleman, P.A.
law@stefancoleman.com
1072 Madison Ave. #1
Lakewood, NJ 08701
Phone: (877) 333-9427
Fax: (888) 498-8946

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713