IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| TODD NICHOLSON, individually and on behalf of all others similarly situated, | No. 3:18-cv-00203-HZ |
| | OPINION & ORDER |
| Plaintiff, | |
| v. | |
| REI ENERGY, LLC, a limited liability company, | |
| Defendant. | |

Kevin Chames
ATTORNEY AT LAW
4150 N. Suttle Road
Portland, OR 97217

Ignacio J. Hiraldo
IJH LAW
14 NE First Avenue
Tenth Floor
Miami, FL 33132

Manuel S. Hiraldo
HIRALDO P.A.
401 E. Las Olas Blvd.
Suite 1400
Fort Lauderdale, FL 33304


1- OPINION & ORDER

Stefan L. Coleman
LAW OFFICES OF STEFAN COLEMAN, P.A.
1072 Madison Avenue, Suite 1
Lakewood, NJ 08701

    Attorneys for Plaintiff

Joel A. Parker
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204

Walter A. Herring
Jessica L. Spaniol
Robin G. Bechtold
MUNCK WILSON MANDALA, LLP
600 Banner Place Tower
12770 Coit Road
Dallas, TX 75251

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Todd Nicholson brings this putative class action against Defendant REI Energy, LLC, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its regulations, 47 C.F.R. § 64.1200. Specifically, Plaintiff alleges that Defendant violated the TCPA when it called his cell phone using an automatic telephone dialing system ("ATDS") without his prior written consent. Defendant now moves to stay this case pending action from the Federal Communications Commission ("FCC") further defining what constitutes an ATDS. For the reasons that follow, the Court denies Defendant's Motion to Stay.

## BACKGROUND

**I.    Factual Background**

Defendant is a Texas corporation that "specializes in the acquisition, development, and management of conventional and unconventional oil and gas properties." Compl. ¶¶ 2, 11, ECF

1. Particularly relevant to the present motion, Plaintiff alleges that Defendant utilized a system that qualifies as an ATDS in contacting potential investors about oil or gas property investment opportunities. *Id.* at ¶ 11. Specifically, Plaintiff asserts that "the hardware and software used by Defendant has the capacity to generate and store random numbers and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention." *Id.* at ¶ 15. An expert retained by Plaintiff opined that the platform used by Defendant "has the capacity to dial telephone numbers from a stored list or database of numbers without human intervention." Pl. Resp. Mot. Stay Ex. A (Snyder Decl.) ¶ 9, ECF 36-1. A corporate representative of Internatiocall testified that it made calls on behalf of Defendant from a list of numbers uploaded to a web-based platform and that the platform was not used to generate telephone numbers. Def. Mot. Stay ("Def. Mot.") Ex. D (Bello Dep.) 60:23–25, ECF 35-4.

Plaintiff, a resident of Portland, Oregon, first received a call from Defendant on his cellular phone on December 21, 2017. Compl. ¶¶ 1, 21. Despite having informed Defendant he was not interested and wanted the calls to stop, Plaintiff alleges that he received a second call on December 22, 2017. *Id.* at ¶¶ 23–24. He again informed Defendant that he "wasn't interested and terminated the call." *Id.* at ¶ 24. Plaintiff alleges that Defendant has harmed consumers by making these calls and has disturbed Plaintiff's "use and enjoyment of his cellular telephone," caused wear and tear on the phone's hardware, and consumed memory on his cellular phone. *Id.* at ¶ 27. Plaintiff seeks an injunction against Defendant requiring it to cease these calling activities and an award of statutory damages along with costs and attorney's fees. *Id.* at ¶ 29.

**II.     Legal Developments**

Plaintiff's claims arise under 47 U.S.C. § 227(b)(1)(A)(iii), which makes it:

> [U]nlawful for any person within the United States . . . to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

This section defines ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1).

Between 2003 and 2015, the FCC issued several declaratory rulings and orders on what equipment qualifies as an ATDS under the TCPA. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018). On March 16, 2018, the Court of Appeals for the District of Columbia set aside certain aspects of the 2015 order.[1] *ACA Int'l v. Fed. Commc'ns Comm'n,* 885 F.3d 687, 692 (D.C. Cir. 2018). The circuit court found that the FCC's definition of ATDS was arbitrary and capricious. *Id.* at 693–705. The FCC had construed "capacity" in § 227(a)(1) as encompassing the *potential* functionalities of the equipment at issue. *Id.* at 693–94. The circuit court held that this expansive definition was unreasonable because it could include devices such as smartphones, which could be modified to function as an ATDS. *Id.* at 695–700. The court also noted that the 2015 order was unclear as to whether a device had to have the ability to generate random or sequential numbers to be dialed to constitute an ATDS or whether it could qualify as an ATDS without that capacity. *Id.* at 701–02. The court indicated that either interpretation

---

[1] There has been some dispute as to whether the DC Circuit invalidated the FCC's prior orders. However, the Ninth Circuit concluded in *Marks v. Crunch San Diego* that "[b]ecause the D.C. Circuit exercised its authority to set aside the FCC's interpretations of the definition of an ATDS in the 2015 order and any prior FCC rules that were reinstated by the 2015 order, . . . the FCC's prior orders on that issue are no longer binding on [the court]." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041,1049 (9th Cir. 2018) (internal citations omitted).

might be permissible, but that "the Commission [could not], consistent with reasoned decisionmaking, espouse both competing interpretations in the same order." *Id.* at 702–03.

In September of 2018, the Ninth Circuit issued its opinion in *Marks v. Crunch San Diego, LLC*. There, the Ninth Circuit considered "anew . . . the definition of ATDS under the TCPA." 904 F.3d at 1049–50. Specifically, the court was tasked with determining whether "to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list." *Id.* at 1050. Interpreting § 227(a)(1), the circuit court found that the language of the statute was ambiguous, citing as support the D.C. Circuit's statement that either interpretation could be permissible. *Id.* at 1051. Ultimately, the court concluded that, "in its context and with a view to its place in the overall statutory scheme[,]. . . the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id.* at 1052 (internal citations and quotations omitted). In other words, ATDS as defined in § 227(a)(1) is "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Id.* The court also found that the device did not have to be fully automatic or operate without any human intervention whatsoever to qualify as an ATDS but, instead, need only engage in automatic dialing. *Id.* at 1052–53.

Meanwhile, a joint petition for declaratory ruling was filed with the FCC seeking guidance on the definition of ATDS.[2] Def. Mot. Ex. A, ECF 35-1. The petitioners asked the FCC

---

[2] Defendant asks the Court to take judicial notice of the joint petition filed with the FCC after *ACA International* and both FCC public notices requesting comments on issues related to the definition of ATDS discussed below. Def. Mot. Stay, Exs. A–C. Plaintiff does not oppose this request. Because these documents are "made 'publicly available by government entities'" and

to clarify the TCPA definition of ATDS and "(1) confirm that to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions." *Id.* at i.

The FCC subsequently issued two public notices requesting comments on issues related to the definition of ATDS under the TCPA. Def. Mot. Exs. B, C, ECF 35-2, 35-3. In the First Notice, the FCC sought comment on "how to determine 'capacity' in light of [*ACA International*]" and "the functions a device must be able to perform to qualify as an automatic telephone dialing system." Def. Mot. Ex. B at 2. The Second Notice, issued on October 3, 2018, sought "further comment on what constitutes an 'automatic telephone dialing system.'" Def. Mot. Ex. C. at 1. The FCC specifically cited the conflict between the Ninth Circuit's expansive decision in *Marks* and the narrower *ACA International* decision. *Id.* at 2. The comment and reply periods extended through the end of June for the first notice and the end of October for the second. Def. Mot. Exs. B, C. To date, the FCC has not made a decision.

## III.    Procedural Background

Plaintiff filed his Complaint on January 31, 2018. Compl. On April 13, 2018, Defendant filed a Motion to Bifurcate Discovery to pursue limited discovery on the equipment used by Defendant to make the calls at issue in this case prior to pursing class certification. Def. Mot. Bifurcate Disc., ECF 23. Defendant asserted that the narrow issue of whether the equipment constituted an ATDS could be dispositive of Plaintiff's claim. *Id.* The Court granted Defendant's Motion, setting a limited discovery deadline for September 7, 2018. The Court also suspended all other deadlines, including class certification, pending the completion of discovery and set the

---

their authenticity is not disputed, the Court takes judicial notice of these documents. *Gusman v. Comcast Corp.*, No. 13CV1049-GPC (DHB), 2014 WL 2115472, at *5 (S.D. Cal. May 21, 2014) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010)).

deadline for filing a dispositive motion on the ATDS issue for 21 days after the close of discovery. Order, ECF 32, 34. Instead of filing a dispositive motion, however, Defendant filed the present Motion for Stay two months after the close of limited discovery. Def. Mot., ECF 35.

## DISCUSSION

Defendant moves to stay this action pending an order by the FCC regarding what constitutes an ATDS in violation of the TCPA. The basis for Defendant's motion is *ACA International v. FCC*, which set aside the FCC's interpretation of the term "capacity" in the definition of ATDS. Since the *ACA International* decision, the FCC has issued two public notices requesting comments on the definition of ATDS. Pursuant to either the primary jurisdiction doctrine or the Court's inherent authority, Defendant argues that this case should be stayed pending new guidelines from the FCC.[3] Def. Mot. 9.

Plaintiff has directed the Court to three other district court opinions in this circuit addressing this issue. In all three cases, the court declined to stay TCPA proceedings under either

---

[3] In support of its motion, Defendant also cites: (1) the split between the Third Circuit and the Ninth Circuit; and (2) *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 17-1705, currently pending before the Supreme Court. First, the Ninth Circuit addressed the Third Circuit's decision in *Dominguez ex. rel. Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018), and "decline[d] to follow the Third Circuit's unreasoned assumption that a device must be able to generate random or sequential numbers in order to qualify as an ATDS." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041,1052 n.8 (9th Cir. 2018). Second, it is unclear how the decision in *PDR Network, LLC*, would impact the issues presented in this case. That appeal involves the interplay between the limited mechanisms for judicial review over certain administrative actions under the Hobbs Act and a finding by a district court that a statute is unambiguous under *Chevron*. With very little discussion, Defendant argues in its Reply that, depending the decision in *PDR Network*, "it is entirely possible that *Marks* will have absolutely no precedential value at all with regard to the definition of an ATDS." Def. Reply Mot. Stay ("Def. Reply") 3. However, regardless of the outcome of *PDR Network*, the FCC's interpretation would likely displace that of the Ninth Circuit as the Ninth Circuit determined that the relevant TCPA language is ambiguous. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

7- OPINION & ORDER

the primary jurisdiction doctrine or the court's inherent authority.[4] *See Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL, 2019 WL 250430 (D. Ariz. Jan. 17, 2019); *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018); *Pieterson v. Wells Fargo Bank, N.A.*, Case No. 17-cv-02306-EDL, 2018 WL 3241069 (N.D. Cal. July 2, 2018). This Court similarly declines to stay these proceedings.

**I.      Primary Jurisdiction Doctrine**

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Under this doctrine, courts have the discretion to defer to the decision-making power of an agency even when there are common-law remedies available to the plaintiff. *Nader v. Allegheny Airlines, Inc.* 426 U.S. 290, 303–04 (1976). Such deference is often appropriate when the action addresses a highly technical finding better suited for the expertise of the agency or involves an issue of first impression. *Clark*, 523 F.3d at 1114; *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.* 307 F.3d 775, 780 (9th Cir. 2002).

The Ninth Circuit has instructed courts to look to four factors in evaluating primary jurisdiction: "'(1) the need to resolve an issue that (2) has been placed by Congress within the

---

[4] Defendant also cites two cases in a footnote in its Reply where district courts—prior to the Ninth Circuit's decision in *Marks*—stayed similar proceedings. *See Thomas v. Smith-Palluck Assocs. Corp.*, 2:17-cv-02001-MMD-CWH, 2018 U.S. Dist. LEXIS 152211, (D. Nev. Sept. 6, 2018); *Soukhaphonh v. Hot Topic, Inc.*, Case No. CV 16-5124-DMG (AGRx), 2018 WL 3601841 (C.D. Cal. May 31, 2018). However, one court lifted the stay after the decision in *Marks*, and the other is currently considering a motion to continue the stay pending a decision from the FCC. *See Soukhaphonh v. Hot Topic, Inc.*, ECF No. 202 (C.D. Cal. May 31, 2018) (lifting stay after issuance of *Marks v. Crunch San Diego*); *see also Thomas v. Smith-Palluck Assocs. Corp.*, 2:17-cv-02001-MMD-CWH (D. Nev.).

jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Clark*, 523 F.3d at 1115 (quoting *Syntek*, 307 F.3d at 781). In addition, efficiency and needless delay are to be considered by the court in deciding whether to invoke primary jurisdiction. *Astiana*, 783 F.3d at 760. "[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Id.* at 761.

Defendant argues that all four factors are applicable here. First, Defendant contends that prior to ruling on summary judgment, "the Court will . . . need clear guidance regarding what capabilities and characteristics are required for equipment to meet the statutory definition of ATDS," a definition which is currently in flux and being actively considered by the FCC. Def. Mot. 12–13. Second, Defendant notes that the FCC has jurisdiction to decide whether certain technology constitutes an ATDS, and "is poised to decide that very issue soon." *Id.* at 14. Third, "[t]he core issue that will require resolution in this case . . . falls squarely within the TCPA's complex and complicated regulatory scheme." *Id.* at 15. Finally, Defendant argues that deference to the FCC on this issue is warranted because it would promote uniformity and is within its particular area of expertise. *Id.* at 15–17.

The Court disagrees. Though "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009), the primary jurisdiction doctrine does not support a stay of this action. In *Marks*, the Ninth Circuit provided binding precedent on the issue presented by this case. Specifically, the court determined that an ATDS is: "equipment which has the capacity— (1) to store numbers to be called or (2) to produce numbers to be called, using a random or

9- OPINION & ORDER

sequential number generator—and to dial such numbers." *Marks,* 904 F.3d at 1052. As one other district court has observed, "[t]he Ninth Circuit's willingness to decide the meaning of an ATDS in *Marks* . . . indicates that defining that term as used in the applicable statute is within the conventional experience of judges and does not involve technical or policy considerations that would place it particularly within the FCC's field of expertise or discretion." *Larson*, 2018 WL 6459964, at *4. Thus, the Court finds that this case presents neither an issue of first impression nor a question better suited to the expertise of the agency. *See Knapper*, 2019 WL 250430, at *2 (noting that after *Marks* "there is no matter of first impression or of such complexity inhibiting this Court from proceeding"); *Pieterson*, 2018 WL 3241069, at *3 ("[T]he primary jurisdiction doctrine does not comfortably fit the circumstances of this case because the issues before the FCC are not ones of first impression and controlling or persuasive law already exists.").

In addition, despite Defendant's assertions to the contrary, it is unclear when the FCC will issue its ruling. As recognized by other district courts in this circuit, a stay based on the FCC's ruling would be indefinite, particularly as that ruling could be subject to further challenge. *Pieterson*, 2018 WL 3241069, at *5 (noting that the FCC could take years to issue an order, which "will be subject to further challenge"). Given that a stay in this case could significantly delay a ruling that, in light of *Marks*, this Court is competent to make, the Court declines to grant a stay under the doctrine of primary jurisdiction at this time.

## II. Inherent Authority

The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). In *Lockyer*, the Ninth Circuit reiterated that in ascertaining whether a stay is appropriate, courts should weigh:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d. 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d. 265, 268 (9th Cir. 1962)). Factors the court considers include whether "the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims," *Levya v. Certified Grocers of Calif., Ltd.*, 593 F.2d. 857, 864 (9th Cir. 1979), and the nature of the relief sought, *see Lockyer*, 398 F.3d at 1112 (denying stay in part because the Attorney General is seeking injunctive relief on behalf of the people of California); *CMAX,* 300 F.2d at 268–69 (granting the stay and noting that the plaintiff is only seeking damages).

Defendant argues that the Court should exercise its inherent authority to stay this case. Def. Mot. 17. Defendant argues that Plaintiff will not be prejudiced by a stay because the FCC is expected to issue an order soon, Plaintiff is not claiming a continued threat of calls from Defendant, and monetary damages in this case are minimal. *Id.* at 18. And Defendant alleges that the burden it would suffer in moving forward with this case is significant because it would require Defendant to pursue dispositive motion practice absent clarification from the FCC. *Id.* at 18–19. Finally, Defendant suggests that a stay would permit the Court to save judicial resources. *Id.* at 19. It asserts that any rulings regarding ATDS would "likely have to be revisited after the FCC issues its order." *Id.*

As described above, there is no indication as to when the FCC might issue a decision on the definition of ATDS, and the Ninth Circuit has provided this Court with binding precedent on this issue. Accordingly, there is no question of law which might soon be answered if the Court were to grant the stay, and any prejudice to Defendant in litigating this case further is outweighed by the prejudice resulting to Plaintiff if he is required to wait indefinitely for a

decision from the FCC. *Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."). In addition, this case has now been pending for over a year. Under the circumstances of this case, further delay will not promote the "orderly course of justice."[5] *CMAX*, 300 F.2d at 268.

## CONCLUSION

Defendant's Motion to Stay [35] is DENIED. The parties shall contact the courtroom deputy to schedule a status conference. The parties shall also file a joint status report and case schedule by noon two days prior to the conference.

IT IS SO ORDERED.

Dated this 28 day of Feb, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge

---

[5] However, the Court may reconsider whether to stay these proceedings if future developments before the FCC, Ninth Circuit, or Supreme Court justify a stay.

12- OPINION & ORDER